UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COLUMBIA ARTISTS MANAGEMENT, LLC,

                    Plaintiff,

        v.

MARCELO ÁLVAREZ, RICHARD MARGISON,
and RAMÓN VARGAS,

                 Defendants.

08 Civ. 11254 (LBS)

**MEMORANDUM
& ORDER**

---

SAND, J.

        Plaintiff Columbia Artists Management, LLC ("CAMI"), which provides management services for performing artists, brings this breach of contract action against Defendants Marcelo Álvarez, Richard Margison, and Ramón Vargas, former clients.  Jurisdiction is established by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff alleges that Defendants are required to pay commissions for performances Plaintiff arranged before the management agreements were terminated in February 2005, even if the performances occurred after that termination.  This Court conducted a bench trial on January 26, 2011.  The parties submitted post-trial memoranda to the Court on February 25, 2011.  This Memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I.   Findings of Fact

        Plaintiff is a New York limited liability company with a sole member, Columbia Artists Management, Inc. ("CAMI Inc."), a New York corporation.  Trial Tr. Jan. 26, 2011 at 3:15–19.  CAMI provides a variety of management services to performing artists, including the booking, scheduling, and servicing of performances and advice and counsel for career development.  Tr.

3:20–24, 5:10–6:14.  Defendants Álvarez, Margison, and Vargas are opera singers who were managed by CAMI until February 2005.  Tr. 13:5–8, 33:15–23.

In 1989, CAMI Inc. entered into an oral agreement with Defendant Margison to provide bookings and management services.  Tr. 65:19–24, 67:6–9.  Defendants Álvarez and Vargas entered into a written representation agreement with CAMI Inc. in or around July 1996.  Exs. 14–15.  These agreements appointed CAMI Inc. as the sole and exclusive North American manager and representative for Defendants, with additional representation in other territories.  *Id.* Pursuant to these agreements, Defendants agreed to pay CAMI Inc. 10% of the compensation they received for opera performances, plus other fees, and commissions for other non-operatic performances and recordings ranging from 5% to 20%, depending on their type and location.  *Id.* Each agreement was terminable at will by either party.  *Id.*  CAMI Inc. assigned the three agreements to CAMI in January 2003.  Tr. 13:5–14.

Defendants were directly managed by Bruce Zemsky and Alan Green, managers employed by CAMI.  Tr. 7:11–13.  In February 2005, Zemsky and Green ceased working as employees of Plaintiff.  Tr. 6:15–7:7, 27:8–13.  Between February 11 and 15, 2005, after Zemsky and Green's employment with CAMI ceased, Defendants separately terminated CAMI as their manager.  Tr. 33:11–17.  Timothy Fox, president of CAMI, sent separate letters to each Defendant identifying the performances CAMI had secured for them prior to CAMI's termination, and stated that CAMI would be due commissions for these performances.  Exs. 28, 32, 35; Tr. 33:24–35:24.  Defendants did not respond to Fox's letters, and did not pay these commissions.  Tr. 35:16–17 (testimony of Fox), 71:15–20 (testimony of Defendant Margison).

**II. Conclusions of Law**

On December 23, 2010, this Court denied Plaintiff's motion for summary judgment. *Columbia Artists Mgmt., LLC v. Álvarez*, No. 08 Civ. 11254 (LBS), 2010 WL 5396097 (S.D.N.Y. Dec. 23, 2010). In that decision, the Court noted its previous holding in *Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc.*, a case involving the same Plaintiff, similar claims, and a dispute also arising from Green and Zemsky's departure from CAMI. No. 05 Civ. 7314 (LBS), 2010 WL 1379737 (S.D.N.Y. Mar. 3, 2010). In *Swenson*, this Court held that "the industry custom governing the relationship between performing artists in the opera industry and their manager is that artists are obligated to pay their managers a commission for any performance booked during the time the manager worked for them, regardless of whether the performance takes place after the managerial relationship ends." *Id.* at *2.

At summary judgment in the instant case, Defendants disputed this finding by offering a declaration from Alan Gordon, National Executive Director of the American Guild of Musical Artists, AFL-CIO ("AGMA"), a labor union that represents musicians including Defendant Margison. Tr. 62:17–18. Gordon's declaration contended that it was not an industry custom for singers to pay post-termination commissions to managers, and Defendants stated that Gordon would testify at trial. The Court noted that Gordon's evidence was particularly important because it contradicted the AGMA-Managers Basic Agreement and the AGMA Code of Professional Standards, Plaintiff's primary documentary evidence supporting its allegations of industry custom. *Columbia Artists Mgmt., LLC v. Álvarez*, 2010 WL 5396097 at *4. Gordon's credibility at trial would have determined the weight to be afforded to this contradictory evidence. In other words, Gordon's testimony was crucial for Defendants' case. The fact that he

was to testify at trial enabled this Court to find genuinely contested issues of material fact
sufficient to survive Plaintiff's motion for summary judgment.

Gordon did not testify at trial, whereas Plaintiff offered multiple written statements by
him and AGMA confirming the industry custom that opera singers pay commissions to managers
for engagements secured before the managers' termination.  These included a proposed Agents
and Managers Agreement Gordon sent to CAMI chairman Ronald Wilford, Ex. 25, Tr. 35:22–
37:2; the AGMA-Managers Basic Agreement dated 1954, Ex. 24, Tr. 9:25–11:23; the AGMA
Code of Professional Standards, Ex. 27, Tr. 11:24–12:19; and a article Gordon wrote for
*Classical Singer* magazine, Ex. 26.  At trial Wilford and CAMI president Timothy Fox attested
to the industry custom that opera singers are obligated to pay post-termination commissions.  Tr.
7:20–9:8 (testimony of Wilford); 25:3–27:4, 36:14–37:24 (testimony of Fox).  The only
Defendant to testify at trial, Margison, corroborated this evidence and testimony.  He understood
that if he terminated CAMI as manager, he would still be obligated to pay commissions to CAMI
for performances arranged before termination.  Tr. 68:18–22.  Moreover, Defendant Margison
stated that he refused to pay the commissions to CAMI because it was not licensed with the State
of New York, Tr. 71:6–11, not because of any belief that he had no obligation to pay post-
termination commissions.  The Court credits the aforementioned testimony from these witnesses.

Defendants have failed to rebut this evidence proving the existence of a custom in the
opera industry for artists terminating their managers to pay commissions for engagements
secured before termination.  In their post-trial memorandum Defendants attempt to distinguish
their specific circumstances, arguing that there is no custom for an artist to pay a management
company which has fired the artist's long-term managers.  However, none of the parties have
previously distinguished these circumstances in the history of this litigation, and this distinction

is not supported by any testimony or documentary evidence from persons in the industry. Defendants claim that sixty-five artists have refused to pay commissions to CAMI, but Defendants did not call these persons to testify, did not provide documentary or testimonial evidence regarding the vast majority of them, and did not demonstrate that these artists were not acting in defiance of industry custom.  Defendants also allege that they had no knowledge of the alleged industry custom, but this claim was flatly contradicted by Margison's testimony.  Tr. 68:18–22.  The parties have stipulated that Defendant Vargas did not have knowledge of the alleged custom, Tr. 79:5–15, but lack of knowledge by one Defendant does not refute a finding that the custom existed; an industry custom can also be found where it was "so notorious" that the party sought to be bound "should have been aware of it."  *SR Int'l Bus. Ins. v. World Trade Ctr. Props.*, 467 F.3d 107, 134 (2d Cir. 2006) (internal citation and quotation marks omitted). Here, Plaintiff has provided documentary evidence for its alleged industry custom spanning fifty years from the labor union representing Defendants and other opera singers, buttressed by testimony from CAMI managers and Margison himself.  Therefore, the Court finds that it is a custom in the opera industry for artists who terminate relationships with their managers to pay those managers commissions for engagements secured before that termination.

The parties also dispute the calculation of damages.  While they agree on the actual commissions earned after Defendants left Plaintiff's management, Defendants argue that Plaintiff's expected profit margin, lack of actual profits, and saved expenses should be incorporated into the damages calculation, offsetting the value of the commissions.  Under New York law, it is well settled that damages "are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed."  *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs.,*

*P.C.*, 692 N.E.2d 551, 553 (N.Y. 1998).  The breach in question involved Defendants' failure to pay commissions after they terminated their relationship with Plaintiff.  This breach was a separate event from Plaintiff's earlier decision to fire Zemsky and Green.  When Defendants decided to breach the contract and not pay post-termination commissions to Plaintiff, CAMI had already ceased incurring Zemsky and Green's expenses, fees, and salaries.  Saved expenses "must be costs or expenditures which would be anticipated had there been no breach." *Fertico Belgium S.A. v. Phosphate Chems. Exp. Ass'n, Inc.*, 510 N.E.2d 334, 469 (N.Y. 1987).  Here, CAMI did not anticipate paying Zemsky and Green's expenses, whether Defendants had breached or not.  Therefore, these are not saved expenses, and do not offset the damages award of the unpaid post-termination commissions.  Similarly, the fact that Plaintiff would have earned a reduced profit margin of 15% had Zemsky and Green remained at CAMI is irrelevant to the damages award in this case.  Defendants breached the contract to pay post-termination commissions after Zemsky and Green had left CAMI, which was no longer incurring the expenses that resulted in the 15% profit margin.  Therefore, the Court holds that Plaintiff is entitled to the full value of the unpaid post-termination commissions for performances secured before the Defendants terminated their relationships with CAMI.

The parties also differ over the calculation of prejudgment interest.  Plaintiff argues that the accrual of prejudgment interest commenced 60 days after it sent Defendants each invoice for unpaid commissions, following CAMI's usual practice.  Tr. 56:4–6.  Defendants argue that this Court has discretion to calculate interest from September 23, 2008, the date this Court entered judgment in the *Swenson* case.  Defendants are mistaken.  Under New York law, this Court must compute interest "from the earliest ascertainable date the cause of action existed," and if damages were incurred at various times, "interest shall be computed upon each item from the

date it was incurred or upon all of the damages from a single reasonable intermediate date."

N.Y. C.P.L.R. § 5001(b) (McKinney 2011).  The September 23, 2008 date came after the last

breach by Defendants, and is therefore not intermediate to any date upon which damages were

incurred.  Therefore, this Court may not adopt Defendants' suggestion, and instead will calculate

interest for each unpaid commission 60 days after Plaintiff sent each invoice to each Defendant,

at the statutory rate of 9% per annum.  N.Y. C.P.L.R. § 5004.  The interest is calculated as

follows:

Commissions and Interest Owed by Defendant Álvarez

| Invoice Date | Date of Interest Accrual | Presenter | Commissions and Disbursements | Interest | Total |
|---|---|---|---|---|---|
| 1/7/2005 | 3/8/2005 | Metropolitan Opera | $3,000.00 | $1,617.63 | $4,617.63 |
| 1/7/2005 | n/a | [Credit] | ($101.54) | n/a | ($101.54) |
| 2/1/2005 | 4/2/2005 | Gran Teatro del Liceo | $11,818.67 | $6,288.66 | $18,107.33 |
| 4/15/2005 | 6/14/2005 | Vienna | $10,386.31 | $5,345.32 | $15,731.63 |
| 4/15/2005 | n/a | [Credit] | ($1,969.78) | n/a | ($1,969.78) |
| 5/18/2005 | 7/17/2005 | Royal Opera House | $11,439.60 | $5,795.13 | $17,234.73 |
| 7/13/2005 | 9/11/2005 | Wiener Staatsoper | $4,734.67 | $2,338.74 | $7,073.41 |
| 8/5/2005 | 10/4/2005 | Bayerische Staatsoper | $3,855.68 | $1,877.23 | $5,732.91 |
| 11/2/2005 | 1/1/2006 | Metropolitan Opera | $6,000.00 | $2,792.74 | $8,792.74 |
| 11/22/2005 | 1/21/2006 | Metropolitan Opera | $3,000.00 | $1,381.57 | $4,381.57 |
| 7/19/2006 | 9/17/2006 | Royal Opera House | $5,470.20 | $2,197.76 | $7,667.96 |
| 9/6/2006 | 11/5/2006 | Royal Opera House | $1,834.70 | $710.63 | $2,545.33 |
| 10/27/2006 | 12/26/2006 | Wiener Staatsoper | $8,300.55 | $3,132.28 | $11,432.83 |
| 7/20/2007 | 9/18/2007 | Opera National de Paris | $10,309.06 | $3,205.55 | $13,514.61 |
| TOTAL | | | $78,078.12 | $36,683.23 | $114,761.35 |

Commissions and Interest Owed by Defendant Margison

| Invoice Date | Date of Interest Accrual | Presenter | Commissions and Disbursements | Interest | Total |
|---|---|---|---|---|---|
| 10/4/2004 | 12/3/2004 | Santander | $1,627.29 | $912.04 | $2,539.33 |

| Invoice Date | Date of Interest Accrual | Presenter | Commissions and Disbursements | Interest | Total |
|---|---|---|---|---|---|
| 10/4/2004 | 12/3/2004 | Hollywood Bowl | $2,800.00 | $1,573.90 | $4,373.90 |
| 10/4/2004 | 12/3/2004 | London (recording) | $2,152.80 | $1,208.96 | $3,361.76 |
| 10/4/2004 | 12/3/2004 | Fed. Withholding Tax | $3,200.00 | $1,801.96 | $5,001.96 |
| 10/4/2004 | 12/3/2004 | State Withholding Tax | $560.00 | $319.27 | $879.27 |
| 10/4/2004 | n/a | [Credit] | ($3,025.74) | n/a | ($3,025.74) |
| 10/28/2004 | 12/27/2004 | Berlin | $7,786.79 | $4,333.44 | $12,120.23 |
| 11/30/2004 | 1/29/2005 | Lyric Opera | $4,200.00 | $2,312.81 | $6,512.81 |
| 1/7/2005 | 3/8/2005 | Lyric Opera | $7,000.00 | $3,781.64 | $10,781.64 |
| 3/2/2005 | 5/1/2005 | Oviedo | $2,639.18 | $1,385.83 | $4,025.01 |
| 4/15/2005 | 6/14/2005 | Metropolitan Opera | $9,975.00 | $5,136.47 | $15,111.47 |
| 5/18/2005 | 7/17/2005 | Metropolitan Opera | $300.00 | $143.99 | $443.99 |
| 6/13/2005 | 8/12/2005 | Covent Garden | $9,330.45 | $4,666.72 | $13,997.17 |
| 8/5/2005 | 10/4/2005 | Gran Teatro del Liceo | $2,440.53 | $1,185.66 | $3,626.19 |
| 11/22/2005 | 1/21/2006 | Gran Teatro del Liceo | $7,015.68 | $3,229.91 | $10,245.59 |
| 12/14/2005 | 2/12/2006 | Covent Garden | $6,017.55 | $2,730.73 | $8,748.28 |
| 1/17/2006 | 3/18/2006 | Covent Garden | $1,524.34 | $688.04 | $2,212.38 |
| 4/12/2006 | 6/11/2006 | Metropolitan Opera | $3,200.00 | $1,363.51 | $4,563.51 |
| 5/16/2006 | 7/15/2006 | Metropolitan Opera | $4,650.00 | $1,929.11 | $6,579.11 |
| 6/14/2006 | 8/13/2006 | L'Opera de Montreal | $4,546.00 | $1,862.59 | $6,408.59 |
| 7/19/2006 | 9/17/2006 | L'Opera de Montreal | $908.30 | $358.30 | $1,266.60 |
| 4/24/2007 | 6/23/2007 | Metropolitan Opera | $1,450.00 | $485.55 | $1,935.55 |
| 5/15/2007 | 7/14/2007 | Metropolitan Opera | $11,600.00 | $3,798.09 | $15,398.09 |
| 6/22/2007 | 8/21/2007 | Metropolitan Opera | $2,900.00 | $928.63 | $3,828.63 |
| TOTAL | | | $94,798.17 | $46,137.14 | $140,935.31 |

Commissions and Interest Owed by Defendant Vargas

| Invoice Date | Date of Interest Accrual | Presenter | Commissions and Disbursements | Interest | Total |
|---|---|---|---|---|---|
| 3/2/2005 | 5/1/2005 | Metropolitan Opera | $3,000.00 | $1,577.67 | $4,577.67 |
| 3/2/2005 | 5/1/2005 | Disbursements | $480.42 | $255.79 | $736.21 |
| 3/2/2005 | n/a | [Credit] | ($923.68) | n/a | ($923.68) |
| 4/15/2005 | 6/14/2005 | Monte Carlo | $3,863.70 | $1,983.69 | $5,847.39 |
| 5/18/2005 | 7/17/2005 | Houston Grand Opera | $8,000.00 | $4,048.44 | $12,048.44 |
| 6/13/2005 | 8/12/2005 | Houston Grand Opera | $4,000.00 | $2,008.58 | $6,008.58 |

| Invoice Date | Date of Interest Accrual | Presenter | Commissions and Disbursements | Interest | Total |
|---|---|---|---|---|---|
| 7/13/2005 | 9/11/2005 | Wiener Staatsoper | $6,344.29 | $3,118.59 | $9,462.88 |
| 7/13/2005 | 9/11/2005 | Deutsche Staatsoper | $5,248.28 | $2,578.85 | $7,827.13 |
| 10/24/2005 | 12/23/2005 | Wiener Staatsoper | $4,862.60 | $2,275.16 | $7,137.76 |
| 10/24/2005 | 12/23/2005 | Florence Opera | $6,904.10 | $3,223.28 | $10,127.38 |
| 11/22/2005 | 1/21/2006 | Florence Opera | $4,554.58 | $2,091.15 | $6,645.73 |
| 12/14/2005 | 2/12/2006 | Metropolitan Opera | $7,500.00 | $3,413.23 | $10,913.23 |
| 1/17/2006 | 3/18/2006 | Metropolitan Opera | $4,500.00 | $2,010.20 | $6,510.20 |
| 2/27/2006 | 4/28/2006 | Metropolitan Opera | $4,500.00 | $1,964.69 | $6,464.69 |
| 3/20/2006 | 5/19/2006 | Rome Opera | $8,574.48 | $3,690.54 | $12,265.02 |
| 3/20/2006 | 5/19/2006 | Metropolitan Opera | $300.00 | $122.57 | $422.57 |
| 3/20/2006 | 5/19/2006 | Metropolitan Opera | $1,500.00 | $647.13 | $2,147.13 |
| 4/12/2006 | 6/11/2006 | Metropolitan Opera | $300.00 | $120.96 | $420.96 |
| 4/12/2006 | 6/11/2006 | Metropolitan Opera | $1,500.00 | $638.62 | $2,138.62 |
| 7/26/2006 | 9/24/2006 | Metropolitan Opera | $10,500.00 | $4,198.36 | $14,698.36 |
| 10/2/2006 | 12/1/2006 | Salzburger Festspiele | $1,282.90 | $496.73 | $1,779.63 |
| 10/2/2006 | 12/1/2006 | Salzburger Festspiele | $6,526.37 | $2,500.30 | $9,026.67 |
| 1/18/2007 | 3/19/2006 | Opera National de Paris | $16,038.12 | $5,707.91 | $21,746.03 |
| 3/23/2007 | 5/22/2007 | Metropolitan Opera | $8,250.00 | $2,803.58 | $11,053.58 |
| 3/17/2007 | 6/30/2007 | Metropolitan Opera | $4,125.00 | $1,364.57 | $5,489.57 |
| 3/17/2007 | 6/30/2007 | Metropolitan Opera | $5,500.00 | $1,819.43 | $7,319.43 |
| 3/17/2007 | 6/30/2007 | Metropolitan Opera | $175.00 | $57.47 | $232.47 |
| 6/22/2007 | 8/21/2007 | Bayerische Staatsoper | $2,152.48 | $683.73 | $2,836.21 |
| 7/20/2007 | 9/18/2007 | Bayerische Staatsoper | $8,516.48 | $2,650.20 | $11,166.68 |
| 9/5/2007 | 11/4/2007 | Bayerische Staatsoper | $4,386.24 | $1,312.25 | $5,698.49 |
| 10/22/2007 | 12/21/2007 | Maggio Mus. Fiorentino | $10,195.20 | $2,931.82 | $13,127.02 |
| 12/3/2007 | 2/1/2008 | Houston Grand Opera | $7,500.00 | $2,080.81 | $9,580.81 |
| 12/28/2007 | 2/26/2008 | Houston Grand Opera | $5,000.00 | $1,354.33 | $6,354.33 |
| 3/28/2008 | 5/27/2008 | Opera National de Paris | $13,476.99 | $3,353.31 | $16,830.30 |
| 4/22/2008 | 6/21/2008 | Opera National de Paris | $9,532.96 | $2,456.19 | $11,989.15 |
| 4/22/2008 | 6/21/2008 | Metropolitan Opera | $1,500.00 | $386.55 | $1,886.55 |
| 5/22/2008 | 7/21/2008 | Metropolitan Opera | $9,000.00 | $2,120.07 | $11,120.07 |
| 6/13/2008 | 8/12/2008 | Metropolitan Opera | $6,000.00 | $1,380.82 | $7,380.82 |
| TOTAL | | | $204,666.51 | $75,427.54 | $280,094.05 |

Finally, Plaintiff seeks an award of costs and fees.  Plaintiff is entitled to an award of costs totaling $700.00 pursuant to N.Y. C.P.L.R. § 8201, and its reasonable disbursements as specified in N.Y. C.P.L.R. § 8301.[1]

## III.  Order

For the reasons stated above, this Court enters judgment in favor of Plaintiff as follows: Plaintiff is awarded a judgment against Defendant Álvarez in the amount of $114,761.35, inclusive of $78,078.12 in commissions and $36,683.23 in prejudgment interest.  Plaintiff is awarded a judgment of $140,935.31 against Defendant Margison, inclusive of $94,798.17 in commissions and $46,137.14 in prejudgment interest.  Plaintiff is awarded a judgment of $280,094.05 against Defendant Vargas, inclusive of $204,666.51 in commissions and $75,427.54 in prejudgment interest.  Plaintiff is awarded costs totaling $700.00 and disbursements pursuant to N.Y. C.P.L.R. § 8301.

SO ORDERED.

Dated:  March 3, 2011
        New York, NY

_____
U.S.D.J.

---

[1] In the event that Plaintiff's reference to "fees" denotes attorney's fees, under New York law, "in the absence of specific statutory authority counsel fees are merely incidents of litigation and thus are not compensable."  *Green v. Potter*, 51 N.Y.2d 627, 629–30 (1980).  Therefore, Plaintiff may not recover its attorney's fees.  The Court has considered all the parties' remaining arguments and found them to be without merit.